WILLIAM T. CUNNINGHAM and Others, Appellants, *v.* BENJAMIN F. JUDSON, Respondent.

*Contract to ship and deliver — when such a contract requires that the party selling should himself ship the articles — a refusal on the part of the defendant to perform, excuses a formal tender.*

The defendant entered into a contract dated New York, January 20, 1880, by which he acknowledged that he had bought of the plaintiffs " about five hundred (500) tons No. 1 'Eglinton' Scotch pig iron, for shipment in March, 1880, from Great Britain to New York, by sail or steam vessels, at sellers' option, deliverable 'ex vessels' on arrival" at New York. The plaintiffs neither owned nor shipped from Great Britain, in March, 1880, any iron of the kind specified in the contract, but in April, 1880, they entered into negotiations, and on May fourteenth received a contract for the purchase of the required quantity of the kind of iron specified in the contract, which had been shipped from a port in Great Britain in March, 1880, by other persons, and which had arrived in New York on May seventh. The defendant having refused to accept the iron, upon the ground that it had not been shipped by the plaintiffs as required by the contract, this action was brought to recover the damages thereby sustained by them.

*Held,* that the defendant was only bound to accept iron to be shipped by the plaintiffs themselves; that he could not be compelled to accept that purchased by the plaintiffs in New York, and that the action could not be maintained.

The express refusal of a party to perform his contract, or to accept the goods to be delivered thereunder, relieves the other party from the necessity of making any further offer or tender, as required by the contract.

Appeal from a judgment in favor of the defendant, entered upon the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

*Everett P. Wheeler*, for the appellants.

*Thomas Darlington*, for the respondent.

Daniels, J. :

The recovery was for the difference between the proceeds of the sale of 500 tons of Eglinton Scotch pig iron, and the amount agreed to be paid for it by the defendant.

For its purchase a contract was entered into by the defendant in the following form :

New York, *January* 20, 1880.

*Bought of Messrs.* Winthrop Cunningham & Son, *for account* Mr. B. F. Judson :

About five hundred (500) tons No. 1 "Eglinton" Scotch pig iron, for shipment in March, 1880, from Great Britain to New York, by sail or steam vessels, at sellers' option, deliverable " ex vessels " on arrival at this port, at thirty-one dollars and seventy-five cents ($31.75) per ton (of 2,240 lbs.), payable by buyer's note to his own order, with interest at six per cent (6 per cent) per annum, at ninety (90) days from delivery of United States weigher's returns, which are to decide quantities to be paid for. Interest for three days' grace to be included.

T. D. HAZARD, *Broker.*

Across the face is written, " Accepted : B. F. Judson."

And it was shown that the iron in controversy was shipped on board the bark Jennie Harkness, from a port in Great Britain, in March, 1880, to be carried to the city of New York. The iron was of the quality and description mentioned in the contract, and the ship arrived at New York on the 7th of May, 1880, and discharged her cargo between the tenth of the month and the first of July.

The iron was not in fact the property of or shipped by the plaintiffs when it was laden on board the vessel, but they entered into a negotiation with the owners of it in April for the purchase of this quantity of it, and on the fourteenth of May received a contract in writing for its sale to them upon the payment of the purchase-price. Upon this state of facts the defendant's attention was directed to the arrival of the iron and the plaintiffs desire to deliver it to him in fulfillment of their contract with him, and on the 14th of May, 1880, he replied to them that they had made no shipment of iron within the contract to meet its terms, and had furnished

him with no order for iron owned by them, and in express terms declined their proposals as not being within the contract. This was followed by further correspondence, and in their letter of the seventeenth of May the plaintiffs in terms tendered the defendant 500 tons of iron of the description of that mentioned in the contract, then on board the Jennie Harkness, and asked for his directions whether they should land it on the wharf or deliver it to lighters, and asked his reply to the inquiry. And in answer to that and two succeeding letters of the eighteenth and nineteenth of similar tenor and effect, the defendant responded on the twentieth declaring that he did not sanction any of their proceedings. This state of affairs, so far as they were affected by the conduct of the parties, continued until the first of June, when the iron was again offered with the United States weigher's return and a negotiable warehouse receipt for it indorsed to him, which he promptly refused and returned to the plaintiffs. In the meantime the iron, not being permitted to remain upon the wharf, was placed in a warehouse on the same pier, and near the place of its delivery from the ship; and by the receipt, indorsed by the plaintiffs, the defendant would have been permitted to have taken it from the warehouse on the production of that document. But apparently for the reason that the iron was not offered to him at the side of the vessel the jury were allowed to infer that the plaintiffs had failed to perform their contract and could not, therefore, recover in the action. But by what had previously transpired between the parties it is clear that the defendant did not intend to accept or receive this iron in fulfillment of the agreement; and did not decline to receive it because of the fact that it had been placed in the warehouse. That was evident from the terms of the letters written by him on the fourteenth and twentieth days of May, for, substantially, they each embodied direct refusals to receive the iron offered to him in performance of the terms of the agreement. And when such a refusal has been made its effect is to dispense with further offers or ceremonials on the part of the other contracting party. (*Cornwell v. Haight,* 21 N. Y., 462, 465; *Crary v. Smith,* 2 Comst., 60, 65; *Blewett v. Baker,* 58 N. Y., 609, 613; *Lawrence v. Miller,* 86 id., 131.)

It is very evident from the case that the plaintiffs possessed the ability to obtain and deliver this iron to the defendant, and that he

did not refuse to receive it because he had the least suspicion of their inability to do that. He on the other hand by his conduct assumed that they could supply him with the iron, but he declined to allow them an opportunity to do that. The effect of his conduct was to dispense with a more formal tender or offer than that which preceded and followed his letters of the fourteenth and twentieth of May; and the fact that the iron was afterwards allowed to go in store because of the defendant's failure to receive it would not under any well settled legal principle prevent the plaintiffs from recovering in the action, for he at no time in any manner declined to receive it on account of that circumstance.

The court at the trial was requested in substance to charge this to be the law, but it refused to do that, and the plaintiffs excepted to the refusal.

But whether this exception was well founded or not it is not necessary to further discuss, for a more important obstacle stood in the way of the plaintiffs' right to maintain the action, preceding the objections which have already been considered. From the manner in which the contract was expressed, it appears to have been the intention of the parties that the defendant should become the purchaser of 500 tons of iron which it was contemplated the plaintiffs themselves should ship from Great Britain to New York. This intention is clearly to be implied from the terms of the agreement, and the only option or choice reserved to the plaintiffs was whether they would ship the iron by sail or steam vessels, and that was reserved in such a manner as clearly to exhibit the expectation and intention that the iron which was to be the subject of the sale was to be iron they themselves would ship and consign within the month of March, 1880, from Great Britain to the city of New York. The contract seems to be susceptible of no other reasonable construction, and as the plaintiffs failed to make such a shipment, and, as a matter of fact, had no interest, whatever, in the iron shipped on board the Jennie Harkness, previous to their contract for the purchase of 500 tons of it, after the arrival at New York, they were not in a condition to require the defendant to fulfill the agreement upon his part. To allow them to go into the market at the city of New York and purchase 500 tons of iron of the quality of that mentioned in the agreement, and

then require the defendant to receive it, would be to make a new and different agreement from that which the parties themselves entered into. It might not be important to the defendant, provided he obtained this quality of iron at the time when it should be delivered, whether the plaintiffs purchased it in Great Britain and shipped it to New York, or made the purchase themselves after it had arrived at that point. But that was not what the parties agreed upon by the contract, and the court has no power to make a different contract for them, even though it may appear to be equally as beneficial to the defendant as that which he had entered into. He had a right to insist upon the performance of the contract as it was made, and to refuse to receive the iron from the plaintiffs which they proposed to deliver. For they neither owned or shipped it, but it was owned and shipped by other parties without their privity, during the month specified for that purpose in the agreement. And this objection to the acceptance of the iron was formally taken by the defendant in his letter of the 14th of May, 1880. The facts are of such a nature as to render it impossible to remove this objection. The iron was not the iron which the defendant had agreed to receive and pay for, and he gave the plaintiffs timely notice of his refusal to accept it for that reason. And as this objection must necessarily be encountered if another trial of the action shall be ordered, and there is no possibility of obviating it, it may now be allowed to have its appropriate weight and effect in the disposition of the case. It necessarily, in any view under the agreement, would result in defeating the plaintiffs' action, and for that reeason, although the case was tried upon a different theory at the circuit, the judgment and order should be affirmed.

Davis, P. J., and Brady, J., concurred.

Judgment and order affirmed.